IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 26-cv-00236-PAB

ENDERSON ENRIQUE CHAVEZ ARMENTA,

    Petitioner,

v.

KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
PAMELA BONDI, U.S. Attorney General,
ROBERT HAGAN, Field Office Director, Denver Field Office, Immigration and Customs Enforcement, and
JUAN BALTAZAR, Warden of Denver Contract Detention Facility,

    Defendants.

---

**ORDER**

---

This matter comes before the Court on petitioner Enderson Enrique Chavez Armenta's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Respondents filed a response. Docket No. 7.

## I. BACKGROUND[1]

Petitioner is a citizen of Venezuela. Docket No. 1 at 1, ¶ 1. Petitioner entered the United States on September 14, 2023, without inspection or admission. *Id.* at 5, ¶ 22. The Department of Homeland Security ("DHS") encountered petitioner shortly thereafter and placed him in removal proceedings. *Id.* DHS charged petitioner with

---

[1] The following facts are taken from petitioner's writ of habeas corpus. Docket No. 1. Respondents have not disputed any facts and do not provide any facts of their own. *See generally* Docket No. 7.

removability under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.*, ¶ 23. Petitioner was subsequently released from DHS custody. *Id.*, ¶ 24.

On or about November 25, 2025, Immigration and Customs Enforcement ("ICE") encountered petitioner at a gas station in Wyoming and detained him. *Id.*, ¶ 25. Petitioner has been in ICE custody since this encounter. *Id.* at 5-6, ¶ 26. Petitioner is being detained at the Denver Contract Detention Facility in Aurora, Colorado. *Id.* at 2, ¶ 8. DHS claims that petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(2). *Id.*, at 1, ¶ 1.

On January 20, 2026, petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Docket No. 1. Petitioner brings a claim for violation of the Immigration and Nationality Act ("INA"), alleging that respondents are not adhering to the requirements of 8 U.S.C. §§ 1225 and 1226 (Count One); a claim for violation of substantive due process (Count Two); and a claim for violation of procedural due process (Count Three). *Id.* at 10-15, ¶¶ 40-56. Petitioner asks the Court to order that he be released from immigration custody or, in the alternative, order a bond hearing under 8 U.S.C. § 1226(a).[2] *Id.* at 16.

## II. ANALYSIS

The parties disagree on whether petitioner's detention is governed by 8 U.S.C. § 1226 or 8 U.S.C. § 1225. *Id.* at 10-11, ¶ 41; Docket No. 7 at 1. Petitioner contends that his detention should be controlled by 8 U.S.C. § 1226(a) because § 1226(a) applied to the detention of noncitizens, like petitioner, "who are in the United States and the

---

[2] Petitioner also asks the Court to order that petitioner not be removed outside the District of Colorado while the petition is pending, to declare that 8 U.S.C. § 1226(a) governs petitioner's detention, and to award attorney's fees and costs. Docket No. 1 at 15-16.

2

government is seeking to remove through removal proceedings." Docket No. 1 at 11, ¶ 42. Because he believes that § 1226 applies, petitioner argues that respondents must release him or provide him a bond hearing. *See id.* at 16. Respondents, however, contend that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who—like petitioner—are "present in the United States and [have] not been admitted or paroled." Docket No. 7 at 1. Respondents claim that petitioner is therefore not entitled to a bond hearing and is subject to mandatory detention. *Id.*

Petitioner claims that respondents' position has been rejected in more than 1,500 district court decisions.[3] Docket No. 1 at 10-11, ¶ 41. On four separate occasions, this Court has analyzed whether § 1225 or § 1226 applies to petitioners who were detained when already present in the United States without inspection and who face removal proceedings due to their entrance without inspection. *See Portillo Martinez v. Baltazar*, No. 26-cv-00106-PAB, 2026 WL 194163, at *2-5; *Garcia-Perez v. Guadian*, No. 25-cv-04069-PAB, 2026 WL 89613, at *2-4 (D. Colo. Jan. 13, 2026); *Alfaro Orellana v. Noem*, No. 25-cv-03976-PAB, 2025 WL 3706417, at *2-4 (D. Colo. Dec. 22, 2025); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019, at *1-4 (D. Colo. Dec. 18, 2025). Each time, the Court has ruled that the petitioner's detention is governed by § 1226. *Id.*

Respondents acknowledge that the Court has previously analyzed this issue, conceding that "[t]his issue is not materially different from an issue this Court has resolved in a prior ruling in another case." Docket No. 7 at 2 (citing *Alfaro Orellana*, 2025 WL 3706417). Respondents state that they submit an abbreviated response "to

---

[3] Petitioner cites to 18 of these cases. *See* Docket No. 1 at 10-11, ¶¶ 38, 41.

3

conserve judicial and party resources and expedite this Court's consideration of this case, while preserving legal arguments and reserving all of Respondent's rights including the right to appeal." *Id.* Respondents note that a decision in this district rejecting respondents' position has been appealed to the Tenth Circuit. *Id.* at 3 (citing *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2025). "Respondents acknowledge that until the Tenth Circuit rules on this issue, the Court's prior ruling on this issue would lead the Court to reach the same result here if the Court adheres to that decision, as the facts of this case are not materially distinguishable from the case for the purposes of the Court's decision on the legal issue of whether petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." *Id.* Thus, "in order to conserve judicial and party resources," respondents incorporate by reference the legal arguments that respondents presented in *Mendoza Gutierrez*, the case which was appealed to the Tenth Circuit.[4] *Id.*

The Court has analyzed the response that was submitted in *Mendoza Gutierrez*, which respondents attached to their response as Exhibit A. Docket No. 7-1. Not finding any additional relevant arguments that the Court has not already addressed in its past four orders on this issue, the Court will grant the habeas petition for the same reasons as it did in *Alfaro Orellana*, which respondents acknowledge does not materially differ from the present case. Docket No. 7 at 2. The Court will recount its analysis in *Alfaro Orellana* below.

---

[4] Respondents specify that they do not consent to issuance of the writ. Docket No. 7 at 3.

The INA "contemplates two detention regimes for noncitizens pending removal proceedings," one controlled by § 1225 and one controlled by § 1226.  *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025) (citation omitted).  Section 1225 mandates detention pending removal proceedings, providing that, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2)(A).  Unless certain exceptions are present, as provided for in §§ 1225(b)(2)(B) and (C), § 1225 "mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies."  *Hernandez*, 2025 WL 2996643, at *3.  Section 1226, on the other hand, does not mandate detention, providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Under § 1226(a)(2), the Attorney General has the discretion to release a noncitizen on bond while removal proceedings are pending.  8 U.S.C. § 1226(a)(2).  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

Respondents argue that *Jennings* supports concluding that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who entered without inspection and remain unlawfully present.  Docket No. 7 at 2.  "[A] proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [petitioner], who has been residing in the United States for more than two years."  *Mendoza Gutierrez*, 2025

5

WL 2962908, at *5 (D. Colo. Oct. 17, 2025) (citation omitted) (collecting cases). The Court disagrees with respondents' contention that *Jennings* supports a different conclusion. The Supreme Court in *Jennings* held that, "[i]n sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)" and that "[i]t also authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under [ ] § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis added). Therefore, *Jennings* distinguishes between noncitizens seeking admission, who are subject to § 1225, and noncitizens who are already present in the country, who are subject to § 1226.

In addition to *Jennings*, the argument that § 1225(b)(2)(A) applies to noncitizens already residing in the United States is contrary to the plain language of § 1225. "The weight of authority interpreting § 1225 has recognized that for section 1225(b)(2)(A) to apply, several conditions must be met – in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *See Loa Caballero v. Baltazar,* No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (internal quotation and citation omitted) (quoting 8 U.S.C. § 1225(b)(2)(A)). Section 1225(b)(2)(A)'s requirement that an applicant for admission be "seeking admission" "requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.* Therefore, noncitizens who "have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission" as defined in § 1225(b)(2)(A). *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025). While these kinds of noncitizens, like petitioner, "may

6

technically be a noncitizen present in the United States who has not been admitted [making] them an applicant for admission," that does not mean that they are "seeking admission." *See id.* (internal quotations omitted). Moreover, § 1225(b)(1)(A)(i) does not support the proposition that both noncitizens just arriving in the United States and noncitizens who entered without inspection are subject to § 1225. Section 1225(b)(1)(A)(i) provides:

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review.

8 U.S.C. § 1225(b)(1)(A)(i).

Section 1225(b)(1)(A)(i)'s reference to § 1225(b)(1)(A)(iii), which in turn references noncitizens who have already been residing in the United States and are inadmissible, does not demonstrate that § 1225 is applicable to noncitizens like petitioner. Section 1225(b)(1)(A)(i) and (iii) are "better understood as carve outs for the 'certain other aliens' that do not fall into § 1225's otherwise general application to *arriving* [non]citizens." *Hernandez*, 2025 WL 2996643, at *6 (citing 8 U.S.C. § 1225(b)(1)). Furthermore, 8 U.S.C. § 1225(a)(3) does not support the proposition that a noncitizen can seek admission simply by meeting the definition of an applicant for admission. Section 1225(a)(3) states that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). In order for § 1225(b)(2)(A)'s mandatory detention provision to apply, it is not enough for a noncitizen to be an applicant for admission; he must also be seeking admission. And an applicant for admission is not necessarily seeking admission. "The 'otherwise

7

seeking admission' language is simply a catch-all provision to describe individuals seeking admission and subject to inspection who may not fit the definition of 'applicant for admission,' such as a person not currently present in the United States." *See Loa Caballero*, 2025 WL 2977650, at *6 n.4.

Finally, respondents' position is unsupported by legislative history. In *Alfaro Orellana* and in *Mendoza Guiterrez*, respondents contended that Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Omnibus Consolidated Appropriations Act, 1997, PL 104–208, September 30, 1996, 110 Stat 3009 ("IIRIRA"), to stop non-citizens who had entered without inspection from having greater procedural and substantive rights in deportation proceedings than noncitizens who presented themselves at a port of entry for inspection. *Alfaro Orellana*, 2025 WL 3706417, at *3; Docket No. 7-1 at 17-19. However, "when Congress enacted the IIRIRA, it 'did not fully disrupt the old system, including the system of detention and release' on bond." *Hernandez*, 2025 WL 2996643, at *7 (quoting *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) ("Congress' concern about adjusting the law in some respects to reduce inequities in the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting all inadmissible noncitizens to mandatory detention, . . . a seismic shift in the established policy and practice of allowing discretionary release under Section 1226(a) – the scope of which Congress did not alter.") (internal quotations omitted)).

Contrary to respondents' assertion, Congress's amendment of § 1226 provides further evidence that petitioner's case should be governed by § 1226 rather than by § 1225(b)(2)(A). *See* Docket No. 1 at 13-14. In January 2025, Congress amended

8

§ 1226, adding § 1226(c)(1)(E).  *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  Section 1226(c)(1)(E) provides that the Attorney General shall take into custody any alien who

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E).  Section 1226(c)(1)(E) mandates detention for a narrow category of noncitizens who both entered the country without inspection and were later arrested for, committed, or admitted to committing one of a list of enumerated crimes.  8 U.S.C. § 1226(c)(1)(E).  This provision would be meaningless if noncitizens already residing in the United States were all subject to mandatory detention under § 1225(b)(2).  *See Salcedo Aceros*, 2025 WL 2637503, at *10 ("If Congress amended Section 1226 to create mandatory detention for certain inadmissible noncitizens, it follows that those noncitizens were not already subject to mandatory detention.").

For the foregoing reasons, "federal district courts have overwhelmingly rejected Respondents' broad interpretation of section 1225(b)(2)."  *See Loa Caballero*, 2025 WL 2977650, at *5 (internal quotation and citation omitted) (collecting cases).  This Court agrees with the weight of authority finding that petitioner's detention is controlled by § 1226(a) and not by § 1225(b)(2)(A).  *See Portillo Martinez*, 2026 WL 194163, at * 5; *Garcia-Perez*, 2026 WL 89613, at *4; *Alfaro Orellana*, 2025 WL 3706417, at *4; *Florez*

*Marin*, 2025 WL 3677019, at *4.  Accordingly, the Court finds that petitioner is being detained under 8 U.S.C. § 1226(a).

Because there is no evidence that petitioner has been provided a bond hearing, his current detention violates § 1226(a).  The Court will grant the habeas petition on Count One and order respondents to provide petitioner a bond hearing within seven days of the date of this order.[5]  While petitioner alternatively requests that the Court order his release, petitioner provides no explanation for why that is a more appropriate remedy than ordering a bond hearing.  *See generally* Docket No. 1.  Thus, in light of the fact that § 1226(a) authorizes detention, the Court finds that a bond hearing is a more appropriate remedy.

In addition to being granted a bond hearing, petitioner requests that the Court declare that 8 U.S.C. § 1226(a) governs petitioner's detention.  A "declaratory relief claim is moot if the relief would not affect the behavior of the defendant toward the plaintiff."  *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted).  However, such claims are not moot if "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."  *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation and citations omitted).

---

[5] Because the Court will grant the habeas petition on the basis of Counts One, it will not reach Counts Two and Three, petitioner's due process claims.  See *Hernandez*, 2025 WL 2996643, at *8 ("the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a)").

A declaration that petitioner's detention was unlawful would not affect respondents' behavior toward petitioner now that the Court has ordered respondents to provide petitioner with a bond hearing. *See Vaupel v. Ortiz*, 244 F. App'x 892, 896 (10th Cir. 2007) (unpublished) (holding that petitioner's declaratory claims for relief were moot after petitioner's release and deportation, declining "to issue an advisory opinion regarding the legality of [petitioner's] detention, because a declaratory judgment on that question would have no meaningful effect on the Department of Homeland Security's future conduct towards him") (internal quotation, alteration, and citation omitted).

As for petitioner's request for attorney's fees, the Court will not consider the request because petitioner fails to comply with the Local Rules of the District of Colorado. A motion for attorney's fees must be filed in accordance with D.C.COLO.LCivR 54.3. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").[6]

### III. CONCLUSION

Therefore, it is

**ORDERED** that the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] is **GRANTED in part**. It is further

---

[6] Because the Court will grant the habeas petition, petitioner's request that the Court order petitioner to not be removed from the District of Colorado while the petition is pending is moot.

**ORDERED** that respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven days** of the date of this Court's order.  It is further

**ORDERED** that within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED February 3, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge